UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MOHAMMED LIAKET ALI,

                Plaintiff,

      -against-                                  11 Civ. 5469 (LAK)

CITY OF NEW YORK, et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

      Appearances:

               Sean Basinski
               *Attorney for Plaintiff*

               Diep Nguyen
               Assistant Corporation Counsel
               MICHAEL A. CARDOZO
               CORPORATION COUNSEL OF THE CITY OF NEW YORK
               *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

      Plaintiff Mohammed Liaket Ali, a mobile food vendor licensed by the City of New York, brings this action against police officer Erik Bonsignore and the City pursuant to 42 U.S.C. § 1983 and state law for false arrest and deprivation of property without due process of law. The matter is before the Court on defendants' motion for summary judgment dismissing the complaint.

*Facts*

The tale is simple enough and undisputed in all material respects.[1] On May 1, 2011, plaintiff Ali and three other push cart vendors were plying their trade in the area of Lafayette and Centre Streets in or near Foley Square. The City was anticipating a demonstration by as many as 10,000 people in Foley Square in connection with the observance of May Day. Accordingly, Officer Bonsignore and his partner were assigned to ask the four vendors to move temporarily. Three did so without incident. Ali, who was vending at the intersection of Lafayette and Worth Streets, proved to be another story.

The officers approached plaintiff, explained that a demonstration involving up to 10,000 people was expected, and asked him to move his cart to an area one block away. Ali initially refused. The officers continued speaking to him for another five or ten minutes, following which he relocated as requested.

Some time later, Ali returned to Lafayette and Worth Streets with his cart and his lawyer. The officers approached him again and repeatedly asked him to move, eventually telling him that they would issue a summons and perhaps arrest him if he did not. Ali again refused, at which point Officer Bonsignore issued a summons to him for violation of N.Y.C. AD. C. § 17-315(j), an offense. The officers then again asked him to move, stating that he would be arrested if he failed to comply. Ali refused, at which point he was arrested for obstruction of governmental

---

[1] Defendants submitted a proper Rule 56.1 statement, appropriately citing admissible evidence in support of those facts that are material to the disposition of this motion. Plaintiff submitted a counterstatement which, with few exceptions, concedes the operative facts. In most of the few instances in which it disagrees with the defendants' statement, plaintiff's statement does not cite evidence in support of its assertions. *E.g.,* Pl. 56.1 St. ¶¶ 6, 15-16, 18, 21. Accordingly, defendants' assertions in those instances are deemed admitted. *E.g., Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP,* 612 F. Supp. 2d 330, 348 (S.D.N.Y. 2009); S.D.N.Y. CIV. R. 56.1.

administration in the second degree in violation of the New York Penal Law. Ali's cart was vouchered and the perishable foods it contained were donated to the New York Rescue Mission.

Plaintiff ultimately accepted an adjournment in contemplation of dismissal of the charged violation of the Penal Law. The summons was dismissed in consequence of the People's failure to file an accusatory instrument. Ali then brought this action to recover damages for an alleged false arrest and the loss of the perishable food stuffs that were given to the rescue mission, which are said to have been worth about $1,000.

*Discussion*

*False Arrest*

The standards governing claims of unconstitutional arrest under Section 1983 are identical to those applicable to state law false arrest claims. The existence of probable cause for the arrest is a complete defense.

New York Penal Law Section 195.05 provides in relevant part:

"A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act . . . ."

Here, the undisputed evidence establishes that the officers had reasonable cause to believe that plaintiff's refusal to move and temporarily remain out of the area he was requested and then told to vacate impaired the police from preparing the Foley Square area to accommodate safely the demonstration or gathering that they had been told would occur, thus establishing probable cause to believe that plaintiff had violated the first clause of Section 195.05. In addition, Section 17-315(j) of the Administrative Code provides in relevant part as follows:

4

> "Where exigent circumstances exist and a police officer or other authorized officer or employee of the city gives notice to a food vendor to temporarily move from a location such vendor shall not vend from such location. For the purpose of this subdivision, *exigent circumstances shall include* but not be limited to, unusually heavy pedestrian or vehicular traffic, . . . or *a parade, demonstration, or other such event or occurrence at or near such location*."[2]

Thus, given the anticipated demonstration, the police officers had reasonable cause to believe that there were exigent circumstances within the meaning of Section 17-315(j) and that Ali's refusal to leave and remain out of the location after being told to do so made his continued vending in that location an "independently unlawful act." They therefore had reasonable cause to believe also – by virtue of Ali's disobedience of Section 17-315(j) – that plaintiff was in violation of the final quoted clause of Section 195.05.

Plaintiff nevertheless argues that defendants have not established the existence of probable cause to arrest on the charge of obstructing governmental administration in the second degree because Ali did not physically interfere with the officers' discharge of their duties.[3] This argument fails.

First, Ali's argument focuses exclusively on the first portion of the statute – that which makes it unlawful to obstruct or impair "by means of intimidation, physical force or interference." While he is correct that such obstruction or impairment must involve some degree of physical interference, no such requirement applies to the final quoted clause of Section 195.05, which defines an alternative means by which the statute may be violated – impairment of a

---

[2] N.Y.C. AD. C. § 17-315(j) (emphasis added).

[3] Pl. Mem. 3-6.

5

governmental function by "any independently unlawful act."[4]

Second, even assuming that the physical interference element of obstruction of governmental administration applied to the "independently unlawful act" clause, it is not nearly as confining as plaintiff claims. *In People v. Kleckner*,[5] for example, the court upheld the sufficiency of a complaint charging obstructing governmental administration in the second degree where a group of individuals chained themselves together along a crosswalk and refused to move off the street when so ordered by a police officer. It emphasized that "[a] defendant's mere refusal to comply with a police officer's order to leave a location where he/she has no right to remain constitutes a physical act sufficient to establish a prima facie case of Obstructing Governmental Administration in the Second Degree."[6] Here, plaintiff's return with his vending cart to an area that the police officers were trying to clear for a demonstration that they had been told would involve about 10,000 people by removing obstacles to the anticipated crowd constituted sufficient physical interference.

Plaintiff's attempt to avoid the impact of Section 17-315(j) by contending that no

---

[4] *See People v. Case*, 42 N.Y.2d 98, 101-02 (1977).

[5] 33 M.3d 1219(A), 939 N.Y.S.2d 742 (Table), 2011 WL 5385747, at *2 (N.Y.C. Crim. Ct. N.Y. Co. 2011). And while it is unnecessary to go so far in order to decide this case, the Court notes also that at least two other judges of this Court have held that "[a]n officer has probable cause to arrest for obstructing governmental administration where a person refuses to comply with an order from a police officer." *Marcavage v. City of N.Y.*, 05 Civ. 4949 (RJS), slip op. at 11 (S.D.N.Y. filed Sept. 29, 2010) (internal quotation marks omitted) (quoting *Johnson v. City of New York*, No. 05 Civ. 7519 (PKC), 2008 WL 4450270, at *10 (S.D.N.Y. Sept. 29, 2008)). *See also Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. 1995) (finding probable cause for arrest where plaintiff refused to follow officer's order to leave her vehicle).

[6] *Kleckner*, 2011 WL 5385747, at *2.

6

large crowd was present at the moment of the arrest[7] and that the number of persons who eventually showed up after plaintiff was taken away turned out to be far less than 10,000 is wide of the mark. It is undisputed that a march from Union Square to Foley Square was imminent. It therefore is undisputed as well that a parade or demonstration was expected and that such an event constituted "exigent circumstances" within the meaning of Section 17-315(j). Indeed, there is no genuine issue of material fact that Officer Bonsignore, the individual defendant in this case, expected a crowd of about 10,000.[8]

> As the defendants argue:
>
> "[P]robable cause is not a high standard, and 'requires only the possibility of criminal activity or the possibility that evidence of a crime will be found.' *See U.S, v. Cruz*, 834 F.2d 47, 50 (2d Cir. 1987) (quoting *U.S. v. Travisano*,724 F.2d 341, 346 (2dCir. 1983)). The probable cause giving rise to a lawful arrest is evaluated based on the totality of the circumstances and is determined based on the facts available to the officer at the time of the arrest. See Ill. v. Gates, 462 U.S. 213, 230-32 (1983); *Ricciuti v. N.Y. City Trans. Auth.*, l24 F.3d 123, l28 (2d Cir. 1997) (citations omitted). An officer generally has probable cause to arrest when he or she, 'on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person being arrested.' *See U.S, v. Valentine*, 539 F.3d 88, 93 (2d Cir. 2008) (quoting *U. S. v. Patrick*, 899 F.2d 169, 171 (2d Cir. 1990))."[9]

Here, the facts and circumstances known to the defendant arresting officer included

---

[7] Pl. Mem. at 7-8.

[8] Def. 56.1 St. ¶ 4 & Diep Aff. Exs. C, D. Plaintiff admits that "a march was planned from Union Square to Foley Square" but asserts a lack of information as to how many people the NYPD in fact expected and points to a newspaper article published the following day that estimated that no more than 500 people actually arrived at Foley Square. Pl. 56.1 St. ¶ 4. But Officer Bonsignore has submitted an affidavit and his memo book entry, both of which make clear that he was told that about 10,000 people were expected. Diep Aff. Exs. C, D. Plaintiff has not disputed that Bonsignore was told precisely that.

[9] Def. Mem. at 5.

7

that Section 17-315(j) authorized the prohibition of street vending at or near the location of "a parade [or] demonstration." It is undisputed that a march from Union Square to Foley Square was expected in the immediate future. Not that the size of the anticipated march or demonstration matters, it is undisputed also that Officer Bonsignore had been told by a high ranking superior officer, certainly a trustworthy source, that the crowd was expected to number about 10,000. Officer Bonsignore personally was aware also of the facts that he and his partner had directed plaintiff to move his cart about a block away and that plaintiff disregarded that direction by returning to the scene with his cart and then disobeyed further instructions to depart. A person of reasonable caution in Officer Bonsignore's circumstances would have been entirely justified in believing that plaintiff had obstructed governmental administration in the second degree. Accordingly, there was probable cause for the arrest.

Plaintiff seeks to avoid this result by contending that he is entitled to at least some discovery before this claim is dismissed. But there is no general right to discovery prior to the entry of summary judgment.[10] A party against whom summary judgment is sought who cannot submit

---

[10] Rule 56(b) permits motions for summary judgment "at any time until 30 days after the close of all discovery." In appropriate circumstances, summary judgment may be granted prior to discovery. *E.g.*, *Waterloo Furniture Components, Ltd. v. Haworth, Inc.*, 467 F.3d 641, 648 (7th Cir. 2011) (the fact that discovery not complete or even begun need not defeat motion for summary judgment); *South Austin Coal.Cmty. Council v. SBC Comm's Inc.*, 274 F.3d 1168, 1171 (7th Cir.2001) ("District courts may mitigate the expense of litigation by resolving motions for summary judgment early in the case-in advance of discovery, if appropriate."); *Alholm v. Am. Steamship Co.*, 144 F.3d 1172, 1177 (8th Cir.1998) ("A defendant may move for summary judgment 'at any time,' and the rules do not require that discovery be completed before the motion is heard."); *Duffy v. Wolle*, 123 F.3d 1026, 1040 (8th Cir.1997) ("Rule 56 of the Federal Rules of Civil Procedure, which governs summary judgment, does not require trial courts to allow parties to conduct discovery before entering summary judgment.") (quoting *United States Through Small Bus. Ad. v. Light*, 766 F.2d 394, 397 (8th Cir.1985) (internal quotation marks omitted)); *Chambers v. Am. Trans Air, Inc.,* 17 F.3d 998, 1002 (7th Cir.1994) ("The 'fact that discovery is not complete-indeed, has not begun-need not defeat the motion. A defendant may move for summary judgment at any time.'") (quoting *Am. Nurses' Ass'n v. Illinois*, 783 F.2d 716, 729 (7th Cir.1986));

admissible evidence needed to raise a genuine issue of material fact may apply for discovery pursuant to Federal Rule of Civil Procedure 56(d) (formerly 56(f)). Such discovery, however, is not available as a matter of course. The non-moving party "must submit an affidavit showing (1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts."[11]

Plaintiff here has submitted a Rule 56(d) affidavit,[12] and there is no suggestion that he has been dilatory in seeking discovery. But the discovery he seeks would go almost entirely to the question whether the facts known to the police department – as distinguished from Officer Bonsignore, who made the arrest – gave the department reasonable cause to think that 10,000 people would show up in Foley Square or that a dangerous condition would be created.[13] But that is entirely beside the point for two reasons, each sufficient in itself to render the requested discovery immaterial.

First, Section 17-315(j) defines "exigent circumstances" – the existence of which

---

*Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir.1990) ("Rule 56 does not require that any discovery take place before summary judgment can be granted."); *Emigra Grp., LLC,* 612 F. Supp.2d at 345-46 (same).

[11]

*Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir.1995) (quoting *Hudson River Sloop Clearwater, Inc. v. Department of Navy*, 891 F.2d 414, 422 (2d Cir.1989)) (internal quotation marks omitted); *accord, e.g.*, *Foresta v. Centerlight Cap. Mgmt., LLC*, 379 Fed. App'x. 44, 47 (2d Cir. 2010); *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir.1994); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir.1985).

[12]

Basinski Aff. [DI 19].

[13]

*Id.* ¶¶ 7-8.

permit the police to require the temporary relocation of push cart vendors – to include "a parade, demonstration, or other such event or occurrence at or near such location." It is undisputed that such an event was about to occur. While the City Council might have drawn the statute differently, and thus left the existence of "exigent circumstances" to triers of fact in every case, it did not do so. The size of the anticipated parade or demonstration and the reliability of any size estimates or predictions are immaterial. Hence, the undisputed evidence is sufficient to establish the absence of a genuine issue of material fact as to the existence of exigent circumstances as defined by Section 17-315(j).

Second, the issue in a false arrest case is not whether someone with the benefit of perfect information and of hindsight would think that there was probable cause at the time of the arrest. It is whether a reasonably cautious person in the position of the individual who made the arrest, at the time he or she made it, would have been justified in believing that an offense had been or was being committed by the person being arrested. Even if Section 17-315(j) applied only in the case of large parades or demonstrations, therefore, the determinative issue is whether a reasonable person in Officer Bonsignore's position would have been justified in believing that a large parade or demonstration was about to occur and that Section 17-315(j) therefore applied.

Officer Bonsignore's memo book clearly shows that he was told by a superior officer that a parade or demonstration involving about 10,000 people was about to occur at or near the location. A reasonable person in his position would have been entitled to act on that estimate, and that would have been true regardless of the basis for or accuracy of the superior officer's

10

information.[14]

The false arrest claim must be dismissed as to both defendants.[15]

*Qualified Immunity*

Even if there were a genuine issue of material fact as to the existence of probable cause, Officer Bonsignore would be entitled to dismissal on the basis of qualified immunity.

Police officers and other governmental officials performing discretionary functions are protected from liability where their actions do not violate a plaintiff's clearly established constitutional rights. In the context of a claim of an arrest allegedly without probable cause,

> "[e]ven if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest. Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.' *Golino*, 950 F.2d at 870; *see also Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir.2002) (stating that 'in situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity.') (citations omitted); *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir.2000). Thus, the analytically distinct test for qualified immunity is more favorable to the officers than the one for probable cause; 'arguable probable cause' will suffice to confer qualified immunity for the arrest."[16]

In this case, plaintiff argues that there was no probable cause because the

---

[14] There is no suggestion that Officer Bonsignore had any reason to doubt the accuracy of what Inspector Lee told him, a circumstance that might have presented the case in a quite different light.

[15] This conclusion moots the question whether the false arrest claim against the City, as distinguished from Officer Bonsignore, could survive in light of *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

[16] *Escalera v. Lunn*, 361 F.3d 767, 743 (2d Cir. 2004).

circumstances were not exigent at the moment of the arrest and the crowd eventually turned out to be smaller than had been anticipated. Even if he were right on those points, however, it was objectively reasonable for Officer Bonsignore to have believed that he had probable cause at the time of the arrest. It would have been entirely reasonable to believe that the statute applied to anticipated exigent circumstances, and whatever may have happened after the arrest would not bear on whether there was probable cause when the arrest was made. Accordingly, the case against Officer Bonsignore must be dismissed in any event.

*The Perishable Foods*

Ali claims that the seizure and donation of the perishable foods on his push cart violated his rights to procedural and substantive due process of law. Defendants seek dismissal of the procedural due process claim on the theory that plaintiff has a post-deprivation remedy under state law and that this forecloses a procedural due process claim.[17]

In the *Parratt* and *Hudson* cases,[18] the Supreme Court held that no procedural due process claim lies where the state affords a plaintiff injured by alleged violations a meaningful post-deprivation remedy. In *Zinermon v. Burch*,[19] however, it distinguished *Parratt* and *Hudson* and made clear that the existence of state remedies does not preclude procedural due process claims where (1) the risk of the deprivation complained of was foreseeable to the state, (2) the state might

---

[17] Neither side has addressed plaintiff's substantive due process claim. The Court therefore does not consider its sufficiency as properly before it.

[18] *Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981).

[19] 494 U.S. 113 (1990).

have reduced that risk either through additional predeprivation safeguards or by limiting the defendants' discretion in implementing established procedures, and (3) the defendants were authorized by the state to implement the requisite safeguards.

As an initial matter, the risk that push carts of arrested vendors would contain perishable foods not only was foreseeable to the City, but in fact foreseen by it. Both Section 17-323 of the Administrative Code[20] and the New York City Police Department Patrol Guide[21] specifically deal with the seizure and disposition of perishable food from street vendors.[22] The City was authorized by the state to implement additional predeprivation safeguards or to limit discretion in implementing the established procedures. But it is not clear whether, in the circumstances of this and similar cases, any additional predeprivation safeguards or limitations of discretion existed. It is not self evident that the police department is or ought to be equipped to handle and store perishable foods that might be taken into its custody incident to the arrest of push cart vendors or, conceivably, others. But neither side has addressed either that issue or *Zinermon.* Nor has either side addressed the underlying question whether the disposition of Ali's perishable foods in the context of his arrest without any predeprivation process violated his right to procedural due process even assuming that a procedural due process claim would not be foreclosed by the *Parratt-Hudson*

---

[20] N.Y.C. AD. C. § 17-323.

[21] Basinski Aff. [DI 26] Ex. H.

[22] As the disposition of the perishable foods was made pursuant to these statements of official City policy, the requirements of *Monell* are satisfied with respect to the property deprivation claim.

line of cases.[23]  The Court therefore declines to reach these issues on this motion.

*The State Law Claims*

Plaintiff asserts on the basis of state law substantially the same claims he has made under 42 U.S.C. § 1983.  Section 50–e(1)(b) of the New York General Municipal Law, however, requires that a plaintiff asserting a claim against a municipality or its officer or employee make a timely notice of claim. Sections 50–e and 50–i provide in substance that a tort claimant serve a notice of claim on the City within 90 days after the incident giving rise to the claim and that the complaint allege that at least 30 days have elapsed since service of the notice and that adjustment or payment has not been made.

As plaintiff concedes, the complaint in this case makes no such allegations, and the limitations period has expired.  Although his counsel almost four months ago stated an intention to seek leave in the state courts to file a late notice of claim, there is no indication that any such application has been made, let alone granted.

Accordingly, the state law claims will be dismissed.

*Conclusion*

For the foregoing reasons, defendants' motion for summary judgment dismissing the

---

[23] Broadly speaking, "the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976).

14

complaint [DI 15] is granted to the extent that all claims against defendant Bonsignore and the *Monell* claim against the City of New York based on the alleged unconstitutional arrest are dismissed.  The motion is denied in all other respects.

        SO ORDERED.

Dated:        September 5, 2012

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)